## IN THE DISTRICT COURT OF THE UNITED STATES
### FOR THE DISTRICT OF SOUTH CAROLINA
### AIKEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO.:  1:24-cr-00412-JFA |
| | ) | |
| vs. | ) | |
| | ) | |
| CODY LEE ANDERSON | ) | |
| | ) | |

### DEFENDANT CODY LEE ANDERSON'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE / VARIANCE

The Defendant, Cody Lee Anderson, by and through his undersigned counsel, hereby moves for a downward departure and variance from the Guideline range calculated under the United States Sentencing Guidelines, which hold him accountable for a $20,000,000.00 loss.

This Court is presented with the unique circumstance that the Defendant and the Government both agree that the Guidelines as currently calculated are far greater than necessary for the purposes of sentencing. As stated, Mr. Anderson faces an enhancement for a $20 million intended loss despite no loss ever occurring and the Government's own prior acknowledgment before this Court that Mr. Anderson's sentencing range should be "in the neighborhood of 30 months." Bateman Sentencing Tr. pg. 11, lines 18-19. Yet the PSR, driven by a theoretical figure untethered from the Government's own assertion about provable loss, and Mr. Anderson's actual role or conduct, produces a far higher range. In truth, and as confirmed by the Government, Mr. Anderson was only ever slated to receive $1 million, and even that never materialized.

Instead, Mr. Anderson –who had no criminal record before this offense –voluntarily withdrew from the conduct well before any criminal investigation began. He also played a far lesser role than his co-defendant, Mr. Bateman, who orchestrated the scheme, held power of attorney over the victim for years, and stood to inherit nearly the entire $20 million—but Mr. Bateman

received only 24 months in prison. Applying the Guidelines mechanically in this case yields a sentence for Mr. Anderson that overstates the seriousness of his offense. This is not a $20 million fraud. This is a zero-loss case involving a secondary actor who tried to undo the harm before the Government even got involved. For these reasons, and the reasons discussed herein, a substantial downward variance is not only warranted but necessary to fulfill the statutory mandate of a sentence that is "sufficient, but not greater than necessary."

# TABLE OF CONTENTS

I.     Introduction ................................................................................................ 5

II.    Factual and Procedural History ................................................................. 5

    A.     Formation of Ms. Crandall's 2020 will.................................................. 5

    B.     Ms. Crandall's death, will probate, and criminal charges........................ 6

    C.     Guilty plea, stipulation, and advisory Guideline range............................ 7

III.   Argument ..................................................................................................... 8

    A.     Mr. Anderson's offense level substantially overstates the seriousness of his role in this offense, and a substantial downward departure is appropriate, because there was no actual loss in this case, Mr. Anderson took efforts to withdraw from the activity before any criminal investigation or pecuniary harm, and Mr. Anderson's unique role in the offense.................................................................................................... 8

    B.     Even if the Court determines that the Guidelines do not support a downward departure, a variance from the Guideline range is warranted based on a consideration of the sentencing factors under 18 U.S.C. § 3553(a) .......................................... 13

        1.     A variance is justified based on application of the § 3553(a) factors and the directive that a sentence be "sufficient but not greater than necessary"...... 13

        2.     § 3553(a)(1): A variance is appropriate based on Mr. Anderson's history and characteristics............................................................................................ 15

        3.     § 3553(a)(1): A variance is appropriate based on the nature and circumstances of Mr. Anderson's offense .................................................. 16

            a.     There was no pecuniary harm suffered in this case ........................... 16

            b.     Mr. Anderson made efforts to extricate himself from the criminal conduct ................................................................................................... 17

            c.     The Government agrees that a sentence of no more than 30 months is appropriate for Mr. Anderson, and a disparity among co-defendants would be created in this case if Mr. Anderson were to receive the same sentence as, or a higher sentence than, his co-defendant ................... 17

        4.     § 3553(a)(2)(A): A substantial variance reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense ................................................................................................... 18

        5.     § 3553(a)(2)(B): A substantial variance affords adequate deterrence to criminal conduct ........................................................................................ 20

        6.     § 3553(a)(2)(C): A substantial variance protects the public from further crimes of the defendant ............................................................................. 20

        7.     § 3553(a)(3): A substantial variance is appropriate given the kinds of sentences available...................................................................................... 20

8.  § 3553(a)(4): A substantial variance is appropriate given the kinds of sentences and the sentencing range established for the applicable category of offense committed by the defendant as set forth in the Guidelines ............ 21

9.  § 3553(a)(5): Pertinent policy statements issued by the Sentencing Commission support a substantial variance ................................................. 21

10. § 3553(a)(6): A substantial variance would avoid unwarranted sentencing disparities ................................................................................................ 22

IV. Conclusion ...................................................................................................... 22

## I.    Introduction

The case comes before the Court following Mr. Anderson's plea to a no-loss bank fraud conspiracy. Mr. Anderson fully admits his wrongdoing in this matter, but submits this Memorandum to assist the Court in determining an appropriate sentence in light of the absence of any loss or pecuniary harm to any victim, his unique efforts to extricate himself from the wrongful conduct before any criminal investigation began, the aberrant nature of his criminal activity and unique circumstances of his offense – especially as compared to his co-defendant Mr. Thomas Bateman, the need to provide a punishment that is sufficient but not greater than necessary, and the need to avoid unwarranted sentencing disparities. For the reasons set forth below, and such other reasons as may be presented at the sentencing hearing, Mr. Anderson respectfully requests that the Court grant a substantial downward departure or variance and impose a sentence well below that of his co-defendant in the case.

## II.    Factual and Procedural History

### A.    Formation of Ms. Crandall's 2020 will

In 2001, Ms. Margaret Crandall and her husband retained an attorney to draft wills for them. Upon her husband's death in December 2012, the co-defendant, Mr. Thomas Bateman, who ran George Funeral Home in Aiken, South Carolina, assisted Ms. Crandall with her husband's affairs. Mr. Bateman remained in relatively constant contact with Ms. Crandall and had insight into her health and financial affairs. In June 2019, Mr. Bateman also became Ms. Crandall's power of attorney. As her power of attorney, he learned that Ms. Crandall had $20 million in two bank

accounts under her name.[1] Sometime in 2020, Mr. Bateman met with an attorney in an unsuccessful effort to change Ms. Crandall's will.

After Mr. Bateman was unable to procure a new will for Ms. Crandall in 2020, he approached Mr. Anderson asking for a "fill-in-the-blank" style will *via* a template which Anderson found on his computer at the funeral home. The will created thereafter left Ms. Crandall's entire estate to Mr. Bateman, while naming Mr. Anderson as the personal representative who would receive approximately five percent of the estate proceeds as payment for services. This arrangement allowed for Bateman to receive 20 million dollars and Anderson to receive 1 million dollars.

In mid-2020, Mr. Bateman brought Ms. Crandall to the funeral home to execute the new will (hereinafter referred to as the "2020 Will"). As is pointed out in the PSR, Bateman then asked three George Funeral Home employees to witness the document PSR pg. 10, ¶29. Mr. Anderson was not physically present when the will was signed and witnessed.

Seven months later, in March 2021, Mr. Anderson emailed a local law firm a new will that removed him as personal representative and asked to schedule an appointment to execute the new will. *See* Attachment A. That appointment was never scheduled and unfortunately, Mr. Anderson never followed up on the execution of a new will.

### B.    Ms. Crandall's death, will probate, and criminal charges

On January 25, 2022, Ms. Crandall passed away. A funeral home employee delivered the will to a law firm to begin the probate process. Almost immediately, individuals close to Ms. Crandall, including those who had been beneficiaries under the previous will, raised issues with the validity of the 2020 Will with the probate court (the court action was later removed to circuit

---

[1] At some point after becoming involved with Ms. Crandall, Mr. Bateman hired the younger Mr. Anderson to work at the funeral home, and Mr. Anderson was eventually able to purchase the funeral home.

court). In April 2022, after receiving the arguments against the 2020 Will's validity, Mr. Anderson instructed his attorney to withdraw his claims under the 2020 Will. *See* Attachment B. This withdrawal was effectuated on April 5, 2022. Accordingly, no funds were ever procured by Mr. Anderson or anyone else related to the criminal case, and no person or entity suffered any pecuniary harm.

According to the discovery provided in this case, the Government began investigating this matter in May 2022 by interviewing those who had challenged the will. Investigators first spoke to Mr. Anderson in June 2022. On May 21, 2024, the Government charged Mr. Bateman with two counts of bank fraud based on his scheme to have Ms. Crandall, who he knew was not competent, sign the 2020 Will in an effort to fraudulently obtain the funds in her two bank accounts. *See* ECF No. 2. On July 16, 2024, more than two years after Mr. Anderson had caused the 2020 Will to be withdrawn, the Government filed a superseding indictment adding Mr. Anderson as a co-defendant and charging him with a bank fraud conspiracy and as an accomplice to the existing bank fraud charges. *See* ECF No. 29.

### C. Guilty plea, stipulation, and advisory Guideline range

On February 2, 2025, after Mr. Bateman pled guilty to his more prominent role in the scheme, Mr. Anderson signed a plea agreement to a single count of bank fraud conspiracy. *See* ECF No. 82. On February 11, 2025, the Court held a change of plea hearing, where Mr. Anderson entered a guilty plea. *See* ECF Nos. 86–87. At that hearing, the Government acknowledged that there had been no loss in the case. On March 3, 2025, the Court sentenced Mr. Bateman, who was to receive 20 million dollars and was the only party initially indicted, to 24 months incarceration. *See* ECF No. 92.[2]

---

[2] Mr. Bateman's guideline range was determined by USPO to be 78-97 months.

On May 6, 2025, the United States Probation Office ("USPO") disclosed the Presentence Report ("PSR"). The PSR noted that Mr. Anderson had a criminal history score of 0 and was a criminal history category I. PSR ¶¶ 55-56. The Total Offense Level was 26, driven almost entirely by a 20-level enhancement for intended loss of $20,000,000.00, which yielded a Guideline range of 63-78 months.[3]

### III. Argument

**A. Mr. Anderson's offense level substantially overstates the seriousness of his role in this offense, and a substantial downward departure is appropriate, because there was no actual loss in this case, Mr. Anderson took efforts to withdraw from the activity before any criminal investigation or pecuniary harm, and Mr. Anderson's unique role in the offense.**

A court may "depart from the applicable Guideline range if 'the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.' " *Koon v. United States,* 518 U.S. 81, 92 (1996) (quoting 18 U.S.C. § 3553(b)). Thus, when unique factors and circumstances take a case out of the "heartland" of the Sentencing, especially when the Guidelines themselves acknowledge these factors, a downward departure is appropriate. *Id.* This is a case far from the heartland of the Guidelines.

The loss amount of approximately 20 million dollars attributed to Mr. Anderson in this case results in a substantial enhancement of 20 levels due solely to the *intended* loss amount. § 2B1.1(b). However, the application notes to § 2B1.1 make clear that "[t]here may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense. In such cases, a downward departure may be warranted." U.S.S.G. § 2B1.1, App. Note

---

[3] Had the loss attributed to Mr. Anderson been the $1,000,000.00 that he was to receive, the Guidelines enhancement would be 14 levels rather than 20, resulting in a sentencing range of 33-41 months.

21(C). This departure – or its predecessor provision in Section 2F1.1 – has been applied in Fourth Circuit cases where the primary basis for a defendant's Guideline range has been intended rather than actual loss.

For example, in *United States v. Kalili*, 100 F. App'x 903, 904, 2004 WL 1336628 (4th Cir. 2004), two women deposited approximately $1,600 by way of a fraudulent check into the defendant's account, and the defendant used the funds. *Id*. at *904. The two women later deposited $800,000 worth of fraudulent checks. *Id*. However, the bank flagged the bad checks, notified authorities, and the defendant entered a guilty plea. *Id*. The Fourth Circuit affirmed the district court's downward departure and found that holding the defendant accountable for the $800,000 "substantially overstated the seriousness of the offense." *Id*. at *905. "While [the defendant's] offense level was correctly increased to 17 based on an intended loss of over $800,000, it is clear that this was not an $800,000 case." *Id*. *see also United States v. Baxley*, 83 F. App'x 561, 566 (4th Cir. 2003) (affirming the district court's grant of a downward departure where defendant's loss was based on the face value of numerous fraudulently submitted insurance policies but defendant did not collect on all of those policies); *United States v. Bros. Const. Co. of Ohio*, 219 F.3d 300, 319 (4th Cir. 2000) (affirming a more culpable co-defendant's sentence and noting that, although the loss in the case was $146,710.52, the district court granted a downward departure and assumed a loss of $10,000 because the Guideline amount overstated the seriousness of the defendant's individual conduct).

Here, Mr. Anderson is even more deserving of a sentence reduction than similarly situated defendants in the Fourth Circuit addressed above who received substantial downward departures.

First, no loss occurred at all in this case. Thus, Mr. Anderson received no financial gain from his role in the offense, no restitution is due, and no funds were ever taken from any victim.

No-loss fraud cases are rare before this Court, and this immediately puts Mr. Anderson in a far superior position to even defendants like that in *Kalili* and other cases, where the Fourth Circuit affirmed substantial downward departures although there had been some loss. To paraphrase the *Kalili* Court, this is not a $20,000,000.00 case – this is a $0.00 case.

Second, discovery in the case shows specific steps by Mr. Anderson to withdraw from the conduct at issue before any criminal investigation. Initially, Mr. Anderson attempted to end the fraud before Ms. Crandall passed away. As the discovery produced in this case shows, in March 2021, nine months before Ms. Crandall's death, Mr. Anderson emailed a law firm seeking to remove himself as personal representative in the will. An attorney with the law firm confirmed that Mr. Anderson sent such email with the will attached, although that meeting was never scheduled by the law firm. *See* Attachment A. After Ms. Crandall passed away, those around her began raising questions about the 2020 Will. Upon reviewing those concerns, Mr. Anderson instructed his lawyer to withdraw his claims under the 2020 Will, which occurred on April 5, 2022. Critically, this was before any criminal investigation and months before Mr. Anderson had been approached by investigators.

If a no-loss fraud case is uncommon, a no-loss fraud case where a defendant extricated himself from the conduct before any loss could occur and prior to the start of a criminal investigation is even more rare. It certainly spotlights how the Guidelines overstate the seriousness of the offense in this case. *See United States v. Williams*, 727 F. App'x 771, 772 (4th Cir. 2018) (affirming the district court's reduction from 79 months to 18 months based, in large part, on defendant's early withdrawal from the criminal conduct); *United States v. Reilly*, 178 F.3d 1288 (4th Cir. 1999) (affirming a downward departure where a defendant took steps to remove herself from the criminal conduct at issue).

Third, Mr. Anderson was not the primary contributing factor to the intended loss in this case. Mr. Anderson's co-defendant in the case, Mr. Bateman, assisted Ms. Crandall with her husband's funeral and hired Mr. Anderson to work at the funeral home. As the Government noted in the factual basis during the plea in this case, it was Mr. Bateman that remained involved in Ms. Crandall's affairs after her husband died, and who obtained power of attorney over her bank accounts in June 2019. Further, as the Government also highlighted, it was Mr. Bateman who attempted to procure a will through a lawyer, who then asked Mr. Anderson for a backdated form will naming Mr. Bateman as the sole beneficiary, and who brought Ms. Crandall to the funeral home to sign the 2020 Will. To be sure, Mr. Anderson knows what he did was wrong, but he stood to receive only a fraction of the amount of his co-defendant from the 2020 Will, a will on which he attempted to remove himself as personal representative, a will that he instructed his lawyer to withdraw before criminal proceedings occurred, and a will that Mr. Bateman engineered while Mr. Bateman held Ms. Crandall's power of attorney. *See Wisconsin v. Mitchell*, 508 U.S. 476, 485 (1993) (noting that a defendant's motive is highly relevant at sentencing).

Fourth, Mr. Anderson was charged with bank fraud under 18 U.S.C. § 1344(2). *See* Plea Agreement, ECF No. 82, at 2. Thus, the victim of Mr. Anderson's crime before this Court are the banks that held Ms. Crandall's funds. While it is true that the elements of § 1344(2) require the Government to prove that the funds at issue were under the custody of a financial institution, the Fourth Circuit has explained this is because to sustain "a § 1344 conviction the government does not have to prove the bank suffered any monetary loss, only that the bank was put at potential risk by the scheme to defraud." *United States v. Brandon,* 298 F.3d 307, 312 (4th Cir. 2002) (quoting *United States v. Akers*, 215 F.3d 1089, 1101 (10th Cir. 2000)). While the facts of this case may meet the technical elements of bank fraud because the funds were in bank custody, it is worth

noting that – in addition to the fact that this case involves no actual loss – the banks were never exposed to any real likelihood of harm. Given that Ms. Crandall had passed away, the funds in the banks' possession were going to be moved into the possession of whoever obtained an order from the probate court. The banks were never in jeopardy of losing their own funds, nor would they ever have been at any feasible civil litigation risks by following the executed order of a probate court. Again, Mr. Anderson does not challenge that he committed the crime to which he has pled, nor does he seek to minimize his actual conduct, but the bank victims' extremely tenuous risk of pecuniary harm highlights why the loss-driven offense level in this case overstates the seriousness of Mr. Anderson's crime as related to the victim banks.

A downward departure would also be in keeping with rulings from other courts to have examined similar issues. *See, e.g.*, *United States v. Markert*, 774 F.3d 922, 928 (8th Cir. 2014) (finding that the Government failed to show any actual loss to the bank and remanding to the district court to impose a sentence of time served, which fell within the 12-18 month Guidelines range); *United States v. McBride*, 362 F.3d 360, 378 (6th Cir. 2004) (case remanded for district court to consider whether to depart downward under 2B1.1 where intended loss of over $1 million "substantially overstated" actual loss of $800); *United States v. Stuart*, 22 F.3d 76, 83 (3d Cir. 1994) ( "Where application of the Guidelines' monetary tables bears little or no relationship to the defendant's role in the offense and greatly magnifies the sentence, the district court should have the discretion to depart downward."); *United States v. Restrepo*, 936 F.2d 661, 667 (2d Cir. 1991) (concluding that downward departure may be warranted where the offense level "bears little relation to the defendant's role in the offense"); *United States v. Kim*, No. CR-07-170-S-BLW, 2008 WL 5054584, at *2 (D. Idaho Aug. 29, 2008) (determining that a defendant was entitled to a six–level downward departure given that the offense level substantially overstated the seriousness of

the offense); *United States v. Oakford Corp*, 79 F. Supp. 2d 357, 368 (S.D.N.Y. 2000) (13-level departure granted where offense level overstates gravity of offense as defendant personally was accountable for only a small portion of $15 million loss); *United States v. Roen*, 279 F. Supp. 2d 986, 991 (E.D. Wis. 2003) (departing nine levels downward and citing cases for the proposition that a downward departure is appropriate where a defendant had a small role in causing the loss determined under the Guidelines).

Accordingly, the facts, circumstances, and unique context here illustrate that this no-loss case is far removed from the "heartland" of the Guidelines. *See Koon,* 518 U.S. at 92. Thus, a substantial downward departure well below the co-defendant's sentence is appropriate as the offense level here substantially overstates the seriousness of Mr. Anderson's role in the offense.

**B.      Even if the Court determines that the Guidelines do not support a downward departure, a variance from the Guideline range is warranted based on a consideration of the sentencing factors under 18 U.S.C. § 3553(a)**

**1.      A variance is justified based on application of the § 3553(a) factors and the directive that a sentence be "sufficient but not greater than necessary"**

Following *United States v. Booker*, 543 U.S. 220 (2005), sentencing courts are not required to impose a sentence within the Guideline range. Instead, the Court should determine a reasonable sentence under a two-step process. *Gall v. United States*, 552 U.S. 38, 49 (2007). First, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id*. (citing *Rita v. United States*, 551 U.S. 338, 347–48 (2007)). Next, the Court must give "both parties an opportunity to argue for whatever sentence they deem appropriate" and "consider all of the [18 U.S.C.] § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.* at 49–50. In doing so, the court "may not presume that the Guidelines range is reasonable." *Id.* In fact, sentencing judges may "place greater reliance" on the section 3553 factors

than the Guidelines, particularly in the context of financial fraud cases. *See, e.g., United States v. Adelson*, 441 F. Supp. 2d 506, 509, 515 (S.D.N.Y. 2006) (noting "the inordinate emphasis that the Sentencing Guidelines place in fraud cases on the amount of actual or intended financial loss.").

Thus, although the Guidelines are "the starting point and the initial benchmark," the Court's sentencing inquiry must focus on the section 3553(a) factors and must be grounded in an "individualized assessment based on the facts presented." *Gall*, 552 U.S. at 49–50. To that end, the Court must consider the following statutory factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide for just punishment; (3) the need to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment; (6) the kinds of sentences available; (7) any pertinent policy statements issued by the Sentencing Commission; (8) the need to avoid unwarranted sentence disparities among defendants with similar records; and (9) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

Congress has further instructed that the Court should recognize "that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582. With that limitation in mind, and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with the purposes of [sentencing]." 18 U.S.C. § 3553(a) (emphasis added).

Mr. Anderson respectfully asks the Court to exercise its discretion in sentencing, given that the specific, individualized circumstances of this case differ from those envisioned in the Guidelines' more generalized calculation. Here, the § 3553(a) factors overwhelmingly support a substantial variance below the suggested Guidelines.

### 2. § 3553(a)(1): A variance is appropriate based on Mr. Anderson's history and characteristics

In determining the particular sentence to be imposed, 18 U.S.C. § 3553(a)(1) directs the Court to consider the "history and characteristics of the defendant." A variant sentence is appropriate where a defendant has no criminal history and the offense of conviction represents an aberration by an otherwise law-abiding citizen. *See United States v. Morales*, 972 F. 2d 1007, 1011 (9th Cir. 1992) ("a district court may depart below Criminal History Category I in instances where the court concludes that the offense of conviction is a single aberrant act of criminal behavior").

This Court has been presented with letters addressing Mr. Anderson's character and value to his community. Mr. Anderson's history and character lead to one conclusion – the crime to which he pleaded guilty is an aberration. His lifetime of hard work, service, and good character – not adequately accounted for in the Guideline range – weigh strongly in favor of a substantial variance. As the PSR evidences, the mistakes in judgment that led to this case are inconsistent with the rest of Mr. Anderson's life. Outside of the conduct at issue in this case, Mr. Anderson has never been charged with a crime of any sort. Further, the conduct to which he pleaded guilty constitutes a single exception to an otherwise law-abiding life. *See United States v. Howe*, 543 F. 3d 128, 133 (3d Cir. 2008) (affirming below guideline sentence based, in part, on finding that defendant guilty of two counts of wire fraud had made an "isolated mistake"); s*ee also United States v. Rowan*, No. 06-321, 2007 U.S. Dist. LEXIS 2126, at *26-30 (E.D. Pa Jan. 10, 2007) (imposing sentence of

probation with home confinement for mail fraud conviction based on defendant's history and isolated nature of crime in that history).

### 3. § 3553(a)(1): A variance is appropriate based on the nature and circumstances of Mr. Anderson's offense

#### a. There was no pecuniary harm suffered in this case

As noted previously, this is far from a typical fraud case. There was no loss in this case and no person or entity suffered any pecuniary harm. The Guidelines calculation in fraud cases depends almost entirely upon the amount of loss, even when that loss has never been realized. *See* § 2B1.1. However, "despite its excessive complexity, still does not account for many of the myriad factors that are properly considered in fashioning just sentences, and indeed no workable guideline could ever do so." *United States v. Ovid*, No. 09-CR-216 (JG), 2010 WL 3940724, at *1 (E.D.N.Y. Oct. 1, 2010). Courts and scholars have repeatedly recognized that the calculation of offense level based upon a loss amount can result in sentence ranges that are unreasonably high and fail to accurately reflect the culpability of the defendant. *See, e.g., United States v. Emmenegger*, 329 F. Supp. 2d 416, 427–28 (S.D.N.Y. 2004) (noting that the loss tables are "a relatively weak indicator of the moral seriousness of the offense or the need for deterrence"). For example, in *United States v. Adelson*, a district court in the Southern District of New York recognized that "because of their arithmetic approach and also in an effort to appear 'objective,'" the Guidelines "tend to place great weight on putatively measurable quantities, such as . . . the amount of financial loss . . . without, however, explaining why it is appropriate to accord such huge weight to such factors." 441 F. Supp. 2d 506, 509 (S.D.N.Y. 2006) (focusing the sentencing analysis on the 18 U.S.C. § 3553(a) factors rather than the Guidelines, which were driven by "the inordinate emphasis that the Sentencing Guidelines place in fraud cases on the amount of actual or intended financial loss").

### b. Mr. Anderson made efforts to extricate himself from the criminal conduct

In addition to lack of any loss, Mr. Anderson took efforts to withdraw from the criminal conduct by seeking to be removed as personal representative and then, before any criminal investigation had started and years before any charges, directing his lawyer to withdraw the will. In *Gall*, the Supreme Court upheld the district court's decision to impose a sentence of probation under similar circumstances. There, the defendant had voluntarily withdrawn from a conspiracy to distribute ecstasy years before he was charged with any misconduct. *Gall*, 552 U.S. at 42–44. The district court attached great weight to the fact that the defendant voluntarily withdrew from the conspiracy, which distinguished him from the majority of defendants convicted of conspiracy in federal court. *Id*. The district court concluded that he was not going to return to criminal behavior, nor was he a danger to society. *Id*.

### c. The Government agrees that a sentence "in the neighborhood of" 30 months is appropriate for Mr. Anderson, and a disparity among co-defendants would be created in this case if Mr. Anderson were to receive the same sentence as, or a higher sentence than, his co-defendant

At the sentencing of the co-Defendant Mr. Bateman in this case, the Government asked for a sentence of 24 months, in spite of a Guideline range of 78 to 97 months.[4] In advocating for this sentence for Mr. Bateman, the Government noted that Mr. Anderson's sentence should "be in the neighborhood of 30 months[.]" Further, upon information and belief, given the facts of this case as a whole the Government has indicated that it will not seek a sentence in excess of 30 months for Mr. Anderson. Certainly, Mr. Anderson agrees that his sentence should not be in excess of 30 months. However, as stated herein the § 3553(a) factors support a sentence of below 30 months.

---

[4] This reduction was requested by way of a 5K in addition to similar 3553 factors seen here.

Additionally, a sentence of less than 30 months is appropriate in light of the 24-month sentence received by the more culpable Mr. Bateman. Although disparity among individuals in the same case is not the type of disparity contemplated by 18 U.S.C. § 3553(a)(6), it is certainly relevant when examining the nature and circumstances of the offense. *See United States v. Pyles*, 482 F.3d 282, 290 (4th Cir. 2007), *vacated on other grounds by* 552 U.S. 1089 (2008) (internal quotation marks omitted).

Here, co-defendant Mr. Bateman initially hired the younger Mr. Anderson, spent years getting close to Ms. Crandall, became her power of attorney, first initiated the process of obtaining a new will, drove her to the will signing, and stood to inherit her entire estate. This is likely why he was the only person initially charged in the case. This disparity alone makes a substantial variance for Mr. Anderson below Mr. Bateman's sentence appropriate. It would not be just for Mr. Anderson to receive the same sentence, or a higher sentence, than the man who primarily drove the scheme and who would have gained **95 percent** of the fraud proceeds had Mr. Anderson not directed his lawyer to withdraw the will.

To be clear, Mr. Anderson accepts full responsibility for his criminal conduct. However, this is not a case where a defendant caused any financial harm, never ceased his bad behavior, or is equally or more culpable than his co-defendant. Although that does not excuse Mr. Anderson's conduct, these factors are relevant under 18 U.S.C. § 3553(a). Thus, a substantial variance is appropriate given the nature and circumstances of Mr. Anderson's offense.

4.     **§ 3553(a)(2)(A): A substantial variance reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense**

While the Court must impose a sentence that "afford[s] adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B), a long sentence – or imprisonment at all – is not necessary

to accomplish that goal here. Many Courts have recognized that the collateral consequences of a conviction – especially in a case with someone who works in a licensed profession – can serve as a powerful deterrent to potential criminals. *United States v. Stewart*, 590 F. 3d 93, 141 (2d Cir. 2009) (sentencing court properly considered that the "conviction itself already visit[ed] substantial punishment" on defendant by likely barring him from future work in his profession (internal quotation marks omitted)); *United States v. Anderson*, 533 F.3d 623, 633 (8th Cir. 2008) (Court properly considered "atypical punishment such as the loss of [defendant's] reputation"); *United States v. Sachakov*, No. 11-CR-120, 2013 WL 101287, at *3 (E.D.N.Y. Jan. 8, 2013) (fact that defendant was likely to lose medical license relevant to setting appropriate sentence); *United States v. Adelson*, 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006) ("With his reputation ruined by his conviction, it was extremely unlikely that he would ever involve himself in future misconduct.").

Research on deterrence and criminal sentencing also indicates that, particularly for white collar criminals, "informal sanctions (such as social censure, shame, and loss of respect)" are "equally important [as imprisonment] in producing the deterrent outcome." Zvi S. Gabbay, *Exploring the Limits of the restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 448-49 (2007). There is no empirical evidence that lengthy sentences provide an additional deterrent effect. *See id*. (no evidence supporting "the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders"). Sentencing courts have recognized the "considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white collar' offenders." *Adelson*, 441 F. Supp. 2d at 514.

A short sentence, or even no active sentence at all, combined with conditions of probation, will constitute adequate punishment for Mr. Anderson and serve as a forceful, tangible reminder to the community of the seriousness of the offense.

### 5. § 3553(a)(2)(B): A substantial variance affords adequate deterrence to criminal conduct

Mr. Anderson has suffered severe direct and collateral consequences because of this case, including damage to his reputation, substantial financial losses and attorneys' fees, and significant stress and strain. These consequences, while justifiable, are sufficient to deter Mr. Anderson from committing any criminal activity in the future. Mr. Anderson's experience of being investigated, indicted and convicted; the accompanying negative media coverage; and the financial debt incurred in mounting a defense serve as powerful deterrents.

### 6. § 3553(a)(2)(C): A substantial variance protects the public from further crimes of the defendant

Given Mr. Anderson's otherwise law-abiding life, there is minimal possibility that he will be involved in any future criminal conduct. Mr. Anderson's educational history, age, and background are all strong indicators that his risk of recidivism is minimal. More importantly, he now understands better than most the serious consequences that can follow from other criminal behavior.

### 7. § 3553(a)(3): A substantial variance is appropriate given the kinds of sentences available

This Court has the authority and may exercise its discretion to consider a wide range of alternatives to the term of imprisonment called for under the Guidelines. In fact, § 3553(a)(3) specifically directs the judge to consider sentences other than imprisonment. In certain cases, "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is

viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing*." Gall*, 552 U.S. at 54.

For this reason, Courts have recognized that in certain appropriate cases, sentences other than incarceration – such as probation, community service, or some combination thereof – can provide a just punishment that is sufficient, but not greater than necessary, to satisfy the § 3553(a) factors. Mr. Anderson is an outstanding candidate for a short prison sentence, or even community service. He is a first-time offender, he has no history of violence, and he is highly motivated to stay away from further legal infractions.

> **8.**     **§ 3553(a)(4): A substantial variance is appropriate given the kinds of sentences and the sentencing range established for the applicable category of offense committed by the defendant as set forth in the Guidelines**

The sentencing range established for the applicable category of offense committed by Mr. Anderson as set forth in the Guidelines is 63 to 78 months. This is the result of an offense level of 26 and a criminal history category of I. Again, however, the Guidelines are not mandatory nor should they be presumed reasonable. *Nelson v. United States*, 129 S. Ct. 890, 172 L. Ed. 2d 719 (2009). The Guidelines are just one of many factors this Court must consider. Mr. Anderson history, the nature and circumstances of the offense, the lack of any loss in this case, and other factors discussed herein provide ample support for this variance.

> **9.**     **§ 3553(a)(5): Pertinent policy statements issued by the Sentencing Commission support a substantial variance**

The policy statement under § 2B1.1, App. Note 21(C) provides for a downward departure when the loss substantially overstates the seriousness of a defendant's role in the offense. Further, § 5K2.0(c) provides that factors not ordinarily relevant, such as acceptance of responsibility, in combination with other factors and present to an exceptional degree, warrant a departure.

### 10. § 3553(a)(6): A substantial variance would avoid unwarranted sentencing disparities

Finally, Congress has instructed courts to "avoid unwarranted sentence disparities" among similarly situated defendants and others. 18 U.S.C. § 3553(a)(6). Under the unique circumstances of this case, a substantial variance would avoid such disparities and not result in any unwarranted sentence disparities. *See United States v. Pyles*, 272 F. App'x 258, 258–62 (4th Cir. 2008) (affirming a probationary sentence with home confinement, despite a Guideline range of 63 to 78 months, and finding that any sentencing disparity was warranted).

## IV. Conclusion

For all the reasons mentioned above, the Court should grant a substantial variance in this case and impose a sentence well below that of Mr. Bateman in this case. Such a sentence, combined with the lifetime shame of a felony conviction and such conditions of probation as the law requires and the Court deems appropriate, will be in the best interest of justice for the general public, the Government, Mr. Anderson, and the community. Here, the significant mitigating factors discussed herein provide compelling support for a substantial variance.

Respectfully submitted,


s/ Gregory P. Harris
Gregory P. Harris (#1739)
Harris & Gasser, LLC
1529 Laurel Street
Columbia, South Carolina 29201
(803) 779-7080


Columbia, South Carolina
September 8, 2025